TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
STEPHEN CHANG (Cal. Bar No. 312580)
LLOYD MASSON (Cal. Bar. No. 270182)
Assistant United States Attorneys
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-7280/4442
Facsimile: (213) 894-0141
E-mail: stephen.chang@usdoj.gov
Lloyd.masson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) ARSHPREET SINGH<br>(4) VIKRAMJEET SINGH<br>(5) HIMMAT SINGH KHALSA<br><br>Defendants. | Case No: 2:25-cr-804-AH<br><br><u>UNITED STATES' TRIAL MEMORANDUM</u><br><br>Trial Date: September 21, 2026<br>Trial Time: 9:00 a.m.<br>Location: Courtroom of the Hon. Anne Hwang |

The United States submits its trial memorandum. Consistent with the Court's standing criminal order, this memorandum contains (1) a factual summary of the United States' case-in-chief; (2) a statement of the charges and the elements of each charge; (3) a time estimate of the length of the government's case-in-chief, including anticipated

cross-examination; and (4) a discussion of relevant legal and evidentiary issues as applied to the facts of the case.[1]

Dated: August 26, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

*/s/ Stephen Chang*
STEPHEN CHANG
LLOYD MASSON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

---

[1] The government met and conferred with defense counsel on August 24, 2026. Defense counsel does not agree with the factual summary. Defense counsel agrees with the statement of charges, elements, and trial length estimate and has provided no position on the government's discussion of issues.

# TABLE OF CONTENTS

PAGE


MEMORANDUM OF POINTS AND AUTHORITIES ............ 1

I. FACTUAL SUMMARY OF THE UNITED STATES CASE IN CHIEF ............ 1

A. OAs 1-3: CO-CONSPIRATORS RENT A SERIES OF TRAILERS FROM BHANGOO TRAILERS THAT ARE USED IN THE CONSPIRACY ............ 2

B. OA 4: CO-CONSPIRATORS RENT TRAILERS FROM SEVEN TOWER RENTALS INC. AND OWNER ISMAIL DE LA TORRE IDENTIFIES ARSHPREET AND NARAYAN SINGH ............ 4

C. OA 5: CO-CONSPIRATORS RENT TRAILER FROM TEXAS ............ 6

D. OA 6-8: Co-Conspirators Purchase Z&F Transportation and Use the Carrier to Commit Thefts of LG Televisions and Electronics ............ 6

E. OAs 10, 11 and 12 – Co-Conspirators Use Salem Express LLC to Steal Household Appliances from Sohnen Enterprises in Santa Fe, Springs CA ............ 8

F. OAs 16, 18, 19, 20, 22, 24 – Co-Conspirators Purchase Skyways Trucking LLC and Use the Carrier to Commit Thefts of Televisions, Solar Panels, and Other Items ............ 9

G. OAs 26, 27, 30, 31, 32, 33 – Co-Conspirators Purchase TPG Transport Inc. and Use it to Commit Freight Theft ............ 11

H. OA 37 – On July 24, 2024 Co-Conspirators Used JM Freight Service LLC to Steal Lights from Chino, CA ............ 13

I. OA 39 – On October 16, 2024 Co-Conspirators Used Seaford Express LLC to Steal Vizio TVs from Grand Prairie, Texas ............ 13

J. GSD Trucking Inc. - Co-Conspirators Steals Shoes from Moreno Valley, California and is Apprehended With a GSD Trucking Placard in Colton, California ............ 13

K. INVESTIGATORS EXECUTE A SEARCH WARRANT AT 8022 SEA SALT AVENUE ............ 14

L. ARSHPREET SINGH WOULD PAY CO-CONSPIRATORS VIA ZELLE ............ 15

II. STATEMENT OF CHARGES AND THE ELEMENTS OF EACH CHARGE ............ 15

A. Count One: Conspiracy to Commit Wire Fraud ............ 15

B. Count Two: Conspiracy to Commit Theft from Interstate or Foreign Shipments ... 17

III. TIME ESTIMATE OF THE LENGTH OF THE UNITED STATES' CASE-IN-CHIEF ... 19

IV. ANTICIPATED LEGAL AND EVIDENTIARY ISSUES ... 19

A. Photographs and Videos ... 19

B. United States Expert Testimony ... 20

C. Summary Exhibit of Voluminous iPhone, iPad Location and Cell Phone Location Date ... 21

D. Business Records ... 22

E. Conditionally Admitting Evidence ... 24

F. Cross-Examination of Defendant ... 25

G. Impeaching Witnesses ... 25

H. Affirmative Defenses, Reciprocal Discovery, and Scope of Expert Testimony ... 25

V. CONCLUSION ... 26

# Table of Authorities

Cases

*Bourjaily v. United States*,
483 U.S. 171 (1987) .......... 23
*Hunter v. Bryant*,
502 U.S. 224 (1991) .......... 23
*Kennedy v. Los Angeles Police Dep't*,
901 F.2d 702 (9th Cir. 1990) .......... 23
*La Porte v. United States*,
300 F.2d 878 (9th Cir. 1962) .......... 23
*Ohio v. Roberts*,
448 U.S. 56 (1980) .......... 24
*Taylor v. Illinois*,
484 U.S. 400 (1988) .......... 26
*U-Haul Int'l v. Lumbermans Mutual Casualty Co.*,
576 F.3d 1040 (9th Cir. 2009) .......... 24
*United States v. Baker*,
855 F.2d 1353 (8th Cir. 1988) .......... 24
*United States v. Black*,
767 F.2d 1334 (9th Cir. 1985) .......... 25
*United States v. Blackwood*,
878 F.2d 1200 (9th Cir. 1989) .......... 20
*United States v. Bonallo*,
858 F.2d 1427 (9th Cir. 1988) .......... 24
*United States v. Catabran*,
836 F.2d 453 (9th Cir. 1988) .......... 24
*United States v. Childs*,
5 F.3d 1328 (9th Cir. 1993) .......... 23
*United States v. Gardner*,
611 F.2d 770 (9th Cir. 1980) .......... 22
*United States v. Gere*,
662 F.2d 1291 (9th Cir. 1981) .......... 25
*United States v. Holguin*,
51 F.4th 841 (9th Cir. 2022) .......... 20, 21
*United States v. McLeod*,
755 Fed. Appx. 670 (9th Cir. 2019) .......... 21
*United States v. Meyers*,
847 F.2d 1408 (9th Cir. 1988) .......... 22
*United States v. Miranda-Uriarte*,
649 F.2d 1345 (9th Cir. 1981) .......... 25

*United States v. Norton*,
867 F.2d 1354 (11th Cir. 1989) .......... 23
*United States v. Oaxaca*,
569 F.2d 518 (9th Cir. 1978) .......... 20
*United States v. Ray*,
930 F.2d 1368 (9th Cir. 1990) .......... 23, 24, 25
*United States v. Scales*,
594 F.2d 558 (6th Cir. 1979) .......... 22, 23
United States v. *Seugasala*,
702 Fed. Appx. 572 (9th Cir. 2017) .......... 21
*United States v. Smith*,
591 F.3d 974 (8th Cir. 2010) .......... 20
*United States v. Watkins*,
600 F.2d 201 (9th Cir. 1979) .......... 25
*United States v. Young*,
248 F.3d 260 (4th Cir. 2001) .......... 27

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTUAL SUMMARY OF THE UNITED STATES CASE IN CHIEF

Defendants Arshpreet Singh, Vikramjeet Singh, and Himmat Singh Khalsa are charged with a two count indictment for (1) conspiracy to commit wire fraud and (2) conspiracy to commit theft from interstate or foreign shipments. The government does not currently expect co-defendants Bikramjit Singh, who is a fugitive, or Narayan Singh, who is in state custody, to be present as defendants in the upcoming trial discussed in this memorandum.

Between March 2024, and continuing through at least June 2025, defendants operated a complex and criminal scheme to steal cargo from warehouses across the Central District of California.

Defendant and co-conspirators would purchase or otherwise pretend to own a carrier company (Carrier), which is a company that specializes in transporting cargo for other individuals or companies (shippers) and has a federal license that authorizes it to do so. Defendants and their co-conspirators would then enroll the Carrier with load boards and freight brokers, companies that connect a cargo shipper with a carrier company that can transport cargo from one location to another, and the Carriers would then be assigned to transport different cargo by the load boards and/or freight brokers.

Conspirators would also rent trailers to complete the cargo transportation, then drive to the shipper in a tractor, which typically bore the name of the Carrier, and receive the cargo. Defendants and their co-conspirators would frequently sign agreements to deliver cargo to a particular location by a particular date and then receive cargo into their trailer. Conspirators would then leave the shipper with the cargo, which frequently was to be delivered to a location other than in California. However, they would not deliver the cargo to its intended destination and instead steal the cargo.

### A. OAs 1-3: CO-CONSPIRATORS RENT A SERIES OF TRAILERS FROM BHANGOO TRAILERS THAT ARE USED IN THE CONSPIRACY

Jay Bhangoo, CEO of Bhangoo Trailer Rentals Inc, is expected to testify about entering into several contracts to rent several trailers to the co-conspirators. These contracts were electronically executed over PandaDocs which uses servers located in Oregon, the use of which transmits an interstate wire.

On May 25, 2024, a co-conspirator, purportedly listing their name as "Narayan Singh" signed a contract to rent a trailer from the IP address 162.233.245.115 located in Fontana, California. AT&T Subscriber records show this IP address was assigned to Bikramjit Singh at 8022 Sea Salt Avenue ("Sea Salt Residence"), in Fontana, California from April 1, 2024 to May 28, 2024. The contract lists the contact telephone number as 209-400-4916 ("4916 Phone"). Verizon records confirm that this phone number is associated with defendant Arshpreet Singh and is associated with email ashugrewal777@gmail.com.

On May 27, 2024, a co-conspirator, purportedly listing the name of "Faisal Mahmood," the same name as the owner of Skyways Trucking LLC, discussed below, signed a contract to rent trailers from the IP address 174.236.99.213 in Fontana, California and again listed the 4916 Phone as the contact phone number. Verizon records show that the 4916 Phone used this IP address several times on May 27, 2024.

On May 28, 2024, another contract was signed under the name Faisal Mahmood, again with IP address 162.233.245.115.

On June 11, 2024, a co-conspirator, purportedly listing their name as "Narayan Singh" and email as "robittruck777@gmail.com" signed another contract with Bhangoo Trailers on June 22, 2024.

Bhangoo Trailer Rentals Inc.'s bank account twice received Zelle payments related to these rentals, including a $2000.00 payment from "Narayan Singh" on May 29, 2024 and a $2,000 payment from a BMO bank account with name Arshpreet Singh on June 11, 2024.

A summary of the trailers rented from Bhangoo Trailers and the related thefts in which the same license plate later appears is below:

| Indictment Reference | Trailer Number | Rental Contract Date and Name | OA # |
|---|---|---|---|
| California License Plate-1 | 4UA2448[1] | May 25, 2024 "Narayan Singh" May 27, 2024 "Faisal Mahmood" | OA 16 –_May 28, 2024 – Skyways Trucking LLC, LG Laptops, Fontana, CA |
| California License Plate-2 | 4UA2449 | May 27, 2024 "Faisal Mahmood" | OA 20 Skyways Trucking LLC, May 30, 2024, HiSense Televisions, Perris, CA |
| California License Plate-3 | 4UP9127 | May 27, 2024 "Faisal Mahmood" | OA 24 – Skyways Trucking - June 3, 2024, Solar Panels, Long Beach, CA |
| California License Plate-4 | 4UU6830 | May 28, 2024 Faisal Mahmood | OA 27 – TPG Transport Inc. - July 7, 2024, Carnival Cruise |

[1] Trailers with license plates 4TE7522 and 4UE9983 were rented on May 27, 2024 under "Faisal Mahmood" Trailers with license plates 4UA1050 and 1051 were rented on June 22, 2024 by "Narayan Singh."

| | | | |
|---|---|---|---|
| | | | Lines Property, Signal Hill, CA |

**B. OA 4: CO-CONSPIRATORS RENT TRAILERS FROM SEVEN TOWER RENTALS INC. AND OWNER ISMAIL DE LA TORRE IDENTIFIES ARSHPREET AND NARAYAN SINGH**

Ismail De La Torre is the former CEO of 7 Towers Rentals, Inc. and is expected to testify to renting several trailers to co-conspirators. De La Torre ultimately shut down his business due to money lost when trailers had been rented and received phone calls from law enforcement that the trailers had been used to steal cargo.

De La Torre rented several trailers to co-conspirator Bikramjit Singh on April 27, 2024, who gave him a $5,000 check through PNC Bank with the name Malwa Transport LLC, a company associated with Bikramjit Singh for which materials were found at the Sea Salt Residence.

On June 1, 2024, De La Torre received a second check for $15,000 with memo line “Trailer Rent” for $15,000 from a Rover Trucking Inc. Materials associated with Rover Trucking Inc. and listing Arshpreet Singh were found during a search of 8022 Sea Salt in August 2024. This check bounced and the trailers were not returned to 7 Rentals Inc.

In May or June 2024, De La Torre was at the Fontana Police Department when he happened to see the individuals he had rented the trailers to. De La Torre took a photo of these individuals (Narayan Singh and Arshpreet Singh).



| Indictment Reference | Trailer Number | Rental | OA |
|---|---|---|---|
| California License Plate-5 | 4PY1129[2] | 7 Towers Rental | OA 11 – Salem Express LLC – Santa Fe Springs, Household Products |
| California License Plate-6 | 1MY8394 | 7 Towers Rental | OA 12 – Salem Express LLC – Santa Fe Springs, |

[2] Trailers with license plates 4TU9750; 4NH7080; 4Tu9751; 4NF6749; 4NG4519; 4TN7331; 4MJ7691; 4MH3376; 4MH3375; 4HJB3437 were also rented from 7 Towers Rental

| | | | |
|---|---|---|---|
| | | | CA, Household Products |

### C. OA 5: CO-CONSPIRATORS RENT TRAILER FROM TEXAS

Saeed Lutfi, the owner of NAS Logistics LLC in Grand Prairie, Texas, is expected to testify that he entered into two contracts to rent seven trailers on September 28, 2024 to a "Harry Sandhu" and "Vicky Koshal." They used the email address robittruck777@gmail.com, an address associated with the 4916 Number and Arshpreet Singh.




Arshpreet Singh and co-conspirators Bikramjit Singh, and Narayan Singh were captured on surveillance picking up the trailers. A trailer rented from NAS Logistics was used in the July 24, 2024 theft involving Seaford Express Inc. and Vizio televisions below.

### D. OA 6-8: Co-Conspirators Purchase Z&F Transportation and Use the Carrier to Commit Thefts of LG Televisions and Electronics

Kamal Khan, owner of Z&F Transportation LLC, is expected to testify that he posted his company for sale on Facebook Marketplace in March 2024. An individual named Toofan Singh and his partner Arshpreet Singh wanted to meet to purchase his company for $22,000. Khan agreed with meet with Arshpreet Singh in Texas to finalize the sale and communicated with an individual using the 4916 Phone.

On March 17, 2024, Khan met Arshpreet Singh at a hotel in Denton, Texas. Arshpreet Singh provided a copy of a New York driver's license with the name

"Ashpreet Singh" to Kamal Khan, which Khan photographed. Arshpreet Singh provided cash for the sale of the company, obtained usernames and passwords for a gmail account associated with Z&F Transportation, and signed an ownership transfer agreement giving Toofan Singh control over Z&F Transportation.

Location data from an iPad tablet recovered from a search warrant of 8022 Sea Salt Avenue, understood to belong to Arshpreet Singh, shows that the device was at a Hilton Garden Inn in Denton, Texas on March 17, 2024. Arshpreet Singh's BMO bank account records also show a transaction on March 18 at SpicyChowK in Denton, Texas and another transaction at "Garden Grill" in Denton Texas on March 19th, a restaurant inside the Hilton Garden Inn in Denton, Texas.

As set forth below, co-conspirators used Z&F Transportation Logistics' credentials to book numerous loads, including with Uber Freight, to steal cargo in their scheme.

- <u>7 – March 27, 2024 LG Televisions, Fontana, CA</u>: On or around March 27, 2024, Narayan Singh, on behalf of Z&F Transportation LLC, picked up LG televisions from LX Pantos, a subsidiary of LG Electronics, in Fontana, California and never delivered it to its intended destination in Florida. Narayan Singh provided his identification and used a phone number associated with his name ("0000 Number"). This cargo load was booked through Uber Freight, a broker that connects carriers with shippers. During this shipment, a placard bearing ZSF Transportation LLC USDOT 3267452 MC 1030953 was visible on the tractor.
- <u>8 - March 28, 2024 Goli Ent, Vernon, CA</u>: – On or around March 28, 2024, Navdeep Singh, picked up a load of electronics such as mice and keyboards, on behalf of Z&F Transportation from Goli-Ent. In Vernon, California. The freight was to be taken to Lakewood, New Jersey but was never delivered. This load was booked with broker Uber Freight. Uber Freight contacted Kamal Khan, the original owner of Z&F Transportation who informed Uber Freight that he had sold the company and not booked any loads with Uber Freight.

### E. OAs 10, 11 and 12 – Co-Conspirators Use Salem Express LLC to Steal Household Appliances from Sohnen Enterprises in Santa Fe, Springs CA

- 10 – May 1, 2024 – Vacuums from Santa Fe Springs, CA: On May 1, 2024, Bikramjit Singh, picked up a load of vacuums from Beach Camera/Sohnen Enterprises in Santa Fe Springs, California using the carrier Salem Express LLC. The freight was supposed to be taken to an Amazon Fulfillment Center in West Jordan, Utah, but was never delivered. The bill of lading for this load contained identification numbers for the freight and associated quantities for four different SKUs of vacuum products. A notebook containing these identification numbers and quantity numbers was found at the Sea Salt Residence.
- 11 - May 2, 2024 – Vacuums and Grills from Santa Fe Springs, CA: On May 2, 2024 Narayan Singh, who provided identification listing his name, picked up a load of vacuums and grills from Beach Camera/Sohnen Enterprises Santa Fe Springs, California using the carrier Salem Express LLC. The freight was supposed to be taken to an Amazon fulfillment center in West Jordan, Utah, but was never delivered. Narayan Singh used a tractor with license plate ZP24065 and a trailer with license plate 4PY1129, the same as one of the trailer license plates rented from 7 Towers Rental..
- 12 – May 2, 2024, Grills and Fryers, Santa Fe Springs, CA: On May 2, 2024, Bikramjit Singh, posing as "Randeep Omni," picked up a load of grills and fryers from Beach Camera/Sohnen Enterprises in Santa Fe Springs, California using the carrier Salem Express LLC. Bikramjit Singh provided a driver's license with name "Randeep Omni." The freight was supposed to be taken to an Amazon fulfillment center in West Jordan, Utah, but was never delivered. Bikramjit Singh used a tractor with license plate ZP24051 and trailer with 1MY8394, which is the same as one of the trailer license plates rented from 7 Towers Rental.

### F. OAs 16, 18, 19, 20, 22, 24 – Co-Conspirators Purchase Skyways Trucking LLC and Use the Carrier to Commit Thefts of Televisions, Solar Panels, and Other Items

Faisal Mahmood is the former owner of Skyways Trucking LLC. In or around May 2024, he sold his company via a Facebook Marketplace post to a person who he believed to be named "Ashu Grewal."

Mahmood received $17,000 in cash and was given a check for $6,000 from Robit Trucking which later bounced. Robit Trucking is a company associated with Arshpreet Singh and materials associated with Robit Trucking were at the Sea Salt Residence. Mahmood received several emails from brokers with stolen loads and from Jay Bhangoo as his name had been listed on the trailer rental.

Uber Freight performed an ip analysis and found that Skyways used an ip address that was also used by Salem Express LLC and Z&F Transportation LLC, both of which were involved with prior cargo thefts.

Having purchased Skyways and having access to the Skyways email address, co-conspirators proceeded to book loads and commit the following thefts:

- 16 – May 28, 2024 – LG Laptops, Fontana, CA: On May 28, 2024 Uber Freight assigned a shipment of LG Laptops to Skyways Truckline with email skywaystruckline@gmail.com. The email responded that Himmat Khalsa with would pick up the shipment. On May 28, 2024, Himmat Singh Khalsa picked up a load of LG laptops from LX Pantos' Warehouse in Fontana, California in a tractor with license plate ZP24065 and a trailer with license plate 4UA2448 (California License Plate-1 rented from Bhangoo Trailers). The load was supposed to be delivered to Salt Lake City, Utah, but was never delivered. Historical cell phone data shows Himmat Singh Khalsa's cell phone (the 6558 number) in the area of the LG warehouse in Fontana, CA.

- 18 – May 29, 2024 – LG Televisions, Fontana, CA: On May 29, 2024 Uber Freight assigned an LG TV shipment from an LX Pantos Warehouse in Fontana to take it to Stockton California. The email address skywaystruckline@gmail.com provided Uber Freight with the following driver information: Narayan Singh, truck #333, trailer 73. After LG declined this driver, Skyways assigned Himmat Singh Khalsa to pick up the load, which was not delivered to its destination.
- 19/20 – May 29 and 30, 2024, HiSense Televisions, Perris, CA: On May 30, 2024, Skyways Truckline Inc. was hired to pick up a load of televisions from iDC Logistics in Perris, California and deliver the televisions to Sumner, Washington. The load was originally scheduled to be picked up on May 29, 2024 by Himmat Singh Khalsa, but was rejected. The next day, May 30, 2024, a second driver, Narayan Singh picked up the cargo load using a tractor with license plate ZP24065 (used in other thefts) and a trailer with license plate 4UA2449, rented from Bhangoo Trailer Rentals Inc. Historical cell phone data shows Narayan Singh's cell phone (the 0000 number) near the iDC Logistics warehouse in Perris, CA during the time of the theft.
- 22 – May 31, 2024, Hankook Tires, Fontana, CA: On May 31, 2024, Skyways Truckline Inc. was hired to pick up a load of Hankook tires from Fontana, California to be delivered to Union City, California. Himmat Singh Khalsa picked up the tires using tractor ZP24051. skywaystrucklineusa@gmail.com told the broker that "when remove report I give you update." Historical cell phone data shows Himmat Singh Khalsa's cell phone (the 6558 number) in the area of the warehouse in Fontana, California. The cargo was not delivered to its intended destination.
- 24 – June 3, 2024, Solar Panels, Long Beach, CA: On June 3, 2024, Skyways Truckline was hired to pick up sixteen pallets of solar panels from a warehouse in Long Beach, California, due to be delivered to a solar company in Hanford, California. Himmat Singh Khalsa picked up the cargo using tractor with license

plate ZP24051, used in other crimes, and a trailer with license plate 4UP9127, rented from Bhangoo Trailer Rental Inc. as discussed above. The cargo was not delivered to its intended destination. Historical cell phone data shows Himmat Singh Khalsa's cell phone (the 6558 number) in the area of the warehouse in Long Beach, California.

### G. OAs 26, 27, 30, 31, 32, 33 – Co-Conspirators Purchase TPG Transport Inc. and Use it to Commit Freight Theft

Hopeton Grizzle, original owner of TPG Transport LLC, is expected to testify that he sold his company to a "Dilpreet Singh" on June 27, 2024. Grizzle provided his email address to "Dilpreet Singh" who thereafter changed the password and began booking transportation loads with various companies, despite an agreement that no deliveries would occur until the company transfer had been completed. Grizzle received phone calls from police departments and brokers about freight theft. TPG Transport Inc. was used for the following thefts:

- <u>26 – July 3, 2024, Cell Phone Accessories, Compton CA</u>: On July 3, 2024, Vikramjeet Singh picked up pallets of cell phone accessories from a warehouse in Compton, CA. The freight was supposed to be delivered to Battle Creek Mississippi, but was never delivered and was later recovered on July 11, 2024. Surveillance video captured Vikramjeet Singh picking up the freight and he used an ID listing his name and Washington address. Device location data from an iPhone 11 Pro associated with Vikramjeet Singh shows the device in the area of the warehouse in Compton, CA.
- <u>27 – July 7, 2024, Carnival Cruise Lines Property, Signal Hill, CA</u>: On July 7, 2024, Narayan Singh picked up property belonging to Carnival Cruise Lines using a tractor with license plate ZP24065, used to commit other thefts, and a trailer with California License Plate 4UU6830, rented from Bhangoo Trailer Rentals Inc.

- 30 – July 9, 2024, Tires, Fontana, CA: On July 9, 2024, Vikramjeet Singh picked up a load of tires from a warehouse in Fontana, California using a tractor with license plate ZP24065. The freight was never delivered to its intended destination. Vikramjeet Singh was also using a trailer with Trailer Number B-72857, rented from Bhangoo Trailers.
- 31 – July 10, 2024, Long Beach, CA - Tires: On July 10, 2024, Vikramjeet Singh picked up a load of tires from Sonny Bosco Inc. in Long Beach, California intended for delivery in Orlando, Florida. Vikramjeet Singh picked up the freight using a tractor with license plate ZP24099, used in other thefts. Device location data from an iPhone 11 Pro associated with Vikramjeet Singh shows the device in the area of the warehouse in Compton, CA.
- 32 – July 11, 2024, Pico Rivera, CA Various Freight: On July 11, 2024, Vikramjeet Singh picked up a load of cargo from Pacific Logistical Corp. intended to be delivered to Phoenix, Arizona. Vikramjeet Singh used a white tractor with license plate ZP24099 and a trailer with license plate 4UP9127, rented from Bhangoo Trailer Rentals Inc. Pacific Logistical observed irregularities such as a phone number involved with a prior cargo theft, contacted the owner of TPG, Grizzle, and was informed that TPG was being used to commit cargo thefts. LASD detectives subsequently arrested Vikramjeet Singh as he was leaving the warehouse.
- 33 – July 11, 2024, Pico Rivera, CA, Freight All Kinds – On July 11, 2024, defendant Arshpreet Singh sent an image of the rate confirmation for the shipment described above in Overt Act 32 from the 4916 number to Vikramjeet Singh's phone ending in 2087.

**H. OA 37 – On July 24, 2024 Co-Conspirators Used JM Freight Service LLC to Steal Lights from Chino, CA**

On July 24, 2024, Vikramjeet Singh, using a carrier named JM Freight Service LLC, traveled to Sea Sky Global Logistics in Chino, CA to pick up a freight shipment of LED lights due to be delivered to Oklahoma that was never delivered to its intended destination. The freight was later found at a truck yard in Fontana.

**I. OA 39 – On October 16, 2024 Co-Conspirators Used Seaford Express LLC to Steal Vizio TVs from Grand Prairie, Texas**

On October 16, 2024, a driver, believed to be Vikramjeet Singh, using the alias Harman Sidhu, working for a carrier named Seaford Express Inc. picked up a load of Vizio televisions from Vizio in Grand Prairie, Texas, that was due to be delivered to Florida but was never delivered to its intended destination. The trailer used in this theft was rented from NAS Trucking.

**J. GSD Trucking Inc. - Co-Conspirators Steals Shoes from Moreno Valley, California and is Apprehended With a GSD Trucking Placard in Colton, California**

Gurpreet Dhaliwal, owner of GSD Trucking Inc. is expected to testify that he was in discussions with a person he believed to be named Narayan Singh, who he later learned was actually Arshpreet Singh, to purchase GSD Trucking. Dhaliwal met with the individual, but ultimately decided not to sell his company. While traveling in India in January 2025, Dhaliwal began to receive messages that his company was stealing loads of products. A broker sent Dhaliwal a notary letter supposedly showing the sale of the company, but Dhaliwal had never executed such a document and never gave authority to Arshpreet Singh to take over his company.

- <u>Jan. 12, 2025 – Colton, CA Trailers</u>: On January 12, 2025, Arshpreet Singh was arrested with two other conspirators attempting to steal three empty trailers in Colton, California. Officers found a placard bearing the name GSD Trucking in Arshpreet Singh's vehicle. Officers also found bolt cutters, numerous license plates from various states, and discovered that two trailers had zip-tied license plates.

- <u>Jan. 24, 2025 – Skechers Shoes, Moreno Valley, CA</u>: On January 24, 2025, an individual believed to be Arshpreet Singh using an ID with name "Michael Rock," picked up a load of Skechers Shoes from Moreno Valley, California, which was supposed to be delivered to Altoona, Pennsylvania, but was never delivered to its intended destination. Arshpreet Singh can be seen on camera signing in to pick up the load. Historical cell phone data shows Arshpreet Singh's cell phone (the 4916 number) in the area of the warehouse in Moreno Valley, California on January 24, 2025.

### K. INVESTIGATORS EXECUTE A SEARCH WARRANT AT 8022 SEA SALT AVENUE

On August 1, 2024, a search warrant was executed for 8022 Sea Salt Avenue. Among notable items found were:

- An iPad Tablet belonging to Arshpreet Singh
- Mail, Records, and Personal Documents Belonging to Arshpreet Singh
- A DMV registration card for Rover Trucking Inc / Arshpreet Singh
- Water Bill for 8022 Sea Salt Listing Arshpreet Singh
- Trailer license plate 4WF5089
- Mail addressed to Vikramjeet Singh
- Identification Cards for Vikramjeet Singh
- Insufficient Funds Records for Rover Trucking Inc.
- Mail addressed to "Malwa Transport LLC"
- Wire Cutters
- An ID for "Harman Sidhu" listing the name "Randeep Omni"
- A ledger notebook containing cargo information, including quantities, from loads stolen from Sohnen Enterprises Inc./Beach Camera in Santa Fe Springs, California

Historical cell phone data shows Himmat Singh Khalsa's cell phone (the 6558 number) and Narayan Singh's cell phone (the 0000 number) were both in the area of 8022 Sea Salt Avenue, Fontana, CA on or around June 1, 2024 between the hours of approximately 2 AM and 7 AM.

### L. ARSHPREET SINGH WOULD PAY CO-CONSPIRATORS VIA ZELLE

Arshpreet Singh owns an account with BMO bank. Certified records from BMO show Zelle transaction records between Arshpreet Singh and each of Narayan Singh, Bikramjit Singh, Vikramjeet Singh, Himmat Singh Khalsa, and an unindicted co-conspirator during the period of the conspiracy.

## II. STATEMENT OF CHARGES AND THE ELEMENTS OF EACH CHARGE

### A. Count One: Conspiracy to Commit Wire Fraud

Defendants Arshpreet Singh, Vikramjeet Singh, and Himmat Singh Khalsa are charged in Count One with Conspiracy to Commit Wire Fraud. The elements are as follows:

First, beginning no later than in or about March 2024, and continuing through at least June 2025, there was an agreement between two or more persons to commit Wire Fraud, in violation of Section 1343 of Title 18 of the United States Code; and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

A conspiracy is a kind of criminal partnership — an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at

least one of the crimes alleged in the Indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

The elements of the underlying charge of wire fraud under section 1343 of Title 18 of the United States Code are as follows:

First, the defendant knowingly participated in or devised or intended to devise a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts. Deceitful statements of half-truths may constitute false or fraudulent representations;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

Fourth, the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements but also the circumstances in which they are used as a whole.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

To convict a defendant of wire fraud based on a scheme to induce a victim to enter a bargain, the false or fraudulent pretenses, representations, or promises must directly or indirectly deceive the victim about the nature of the bargain. A misrepresentation will go to the nature of the bargain if it goes to price or quality, or otherwise to essential aspects of the transaction. Whether a misrepresentation goes to the nature of the bargain may depend on the specific transaction at issue.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

**B. Count Two: Conspiracy to Commit Theft from Interstate or Foreign Shipments**

Defendants Arshpreet Singh, Vikramjeet Singh, and Himmat Singh Khalsa are charged in Count Two with Conspiring to Commit Theft from Interstate or Foreign Shipments in violation of Section 371 of Title 18 of the United States Code.

The elements are as follows:

First, beginning no later than in or about March 2024, and continuing through at least June 2025, there was an agreement between two or more persons to commit theft from an interstate or foreign shipment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do

something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by knowingly participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who knowingly joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts.

The elements of the underlying charge of Theft from an Interstate or Foreign Shipments in violation of Section 659 of Title 18 of the United States Code are as follows:

First, the defendant stole the property described in the indictment from a shipment in interstate or foreign commerce; and

Second, the defendant did so with the intent to convert the property to his own use; and

Third, the property had a value of $1,000 or more.

Property is moving as or is a part of a shipment in interstate or foreign commerce if the point of origin is in one state or country and the destination is another state or country. Property is moving as an interstate or foreign shipment at all points between the point of origin and the final destination, regardless of any temporary stop while awaiting transshipment or otherwise.

## III. TIME ESTIMATE OF THE LENGTH OF THE UNITED STATES' CASE-IN-CHIEF

The United States estimates its case-in-chief will last approximately ten-twelve court days, including anticipated cross-examination. Absent the parties reaching any agreements on stipulations, the United States expects to call approximately at least 40 witnesses in its case-in-chief. While there are numerous witnesses given the numerous thefts in the matter, the government expects most witnesses to testify for only approximately 20-30 minutes each. The defense has not yet indicated whether they will call witnesses, which could also result in a few additional trial days if witnesses are called. The government is in the process of meeting and conferring with counsel for defendants on potential factual stipulations, such as the use of interstate wires, in an attempt to streamline the trial.

## IV. ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

Below are legal and evidentiary issues that the United States anticipates may arise during trial.

### A. Photographs and Videos

The United States will seek to admit photographs and video evidence through witnesses who observed events captured in the recordings and through witnesses who act as owners or custodians that captured the records. There is no rigid set of requirements to lay the foundation for audio and video evidence. If the United States makes a *prima facie* showing of authenticity, the "probative force of the evidence offered is, ultimately, an issue for the jury." *United States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir. 1989).

Testimony that a recording depicts evidence that the witness observed is sufficient to authenticate the recording. Fed. R. Evid. 901(b); *United States v. Smith*, 591 F.3d 974, 979-80 (8th Cir. 2010). Photographs and videos should be admitted so long as they fairly and accurately represent the event or object in question. See *United States v. Oaxaca*, 569 F.2d 518, 525 (9th Cir. 1978). Notably, "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture." 32 McCormick on Evid. § 215 (7th ed.). Rule 901(a) simply requires that a proponent of evidence make a prima facie showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is." Fed. R. Evid. 901(a)

**B. United States Expert Testimony**

The United States provided defendants notice that it intends to introduce expert testimony from FBI Cellular Analysis Survey Team Special Agent Nathaniel Dingle.

As required by *United States v. Holguin*, 51 F.4th 841 (9th Cir. 2022), the United States will request that the Court make an express reliability finding on the record regarding the expert's testimony. In *Holguin*, the Ninth Circuit held that "district courts must make explicit findings that the government's expert testimony was reliable." Id. at 851. As the Court explained, "[a] district court abdicates its gatekeeping role, and necessarily abuses its discretion, when it makes no reliability findings." *Id.* "Reliability findings must be made 'explicit' on the record – an 'implicit' finding does not suffice." *Id.* "This requirement ensures that district courts engage in the reliability inquiry and create a record of that inquiry to facilitate appellate review." *Id.* at 851 (citations and quotations omitted); see also id. at 855-56 (explaining that "[e]xperience alone is a reliable basis for the expert testimony" in certain contexts, especially where the "expert generally testified based on their experience rather than based on any systematic methodology").[3]

[3] The United States has also listed in its expert disclosure FBI TFO Edmund

(footnote cont'd on next page)

Here, defendants have not moved to exclude and have not challenged the reliability of the United States expert's principles or methodologies. However, given *Holguin's* directive that such findings be "explicit," the United States requests that the Court make a reliability finding on the record. To that end, at side bar or outside the presence of the jury, the United States will then move the Court to find that each witness is qualified and that their testimony is based on reliable principles and methods. The expert disclosure attached as Exhibit 1 includes a summary of qualifications of the expert witnesses. To the extent the Court may wish to make a reliability finding outside the presence of the jury and before a witness testifies, the United States proffers the disclosure to support an explicit reliability finding.

**C. Summary Exhibit of Voluminous iPhone, iPad Location and Cell Phone Location Date**

To streamline the presentation of evidence for the jury, the United States intends to use the cellular location data images that Agent Dingle, the cellular location expert, prepared to summarize voluminous location data from cell phone and device location records. The United States intends to offer these images into evidence at trial under Federal Rule of Evidence 1006. The United States also provided defendant with the underlying data and business record certifications for the underlying data.

Charts and summaries of evidence are governed by Rule 1006, which permits the introduction of charts, summaries, or calculations of voluminous writings, recordings, or photographs which cannot conveniently be examined in court. *See* Fed. R. Evid. 1006. Accordingly, a summary chart may be admitted as substantive evidence when the proponent establishes that the underlying documents on which the summary is based are

---

McCorkle, who performed an extraction of an Apple iPad and FBI Digital Forensic Examiner Christopher Sabatino, who performed an extraction of an Apple iPhone 11 Pro cell phone. It is the government's view that testimony regarding the use of software to extract data from cellphones and tablets does not require expert testimony and the government listed these experts only in an abundance of caution. *United States v. McLeod*, 755 Fed. Appx. 670, 673 (9th Cir. 2019); United States v. *Seugasala*, 702 Fed. Appx. 572, 575 (9th Cir. 2017).

voluminous, admissible, and available for inspection. *Id*; *see also United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988). All that is required for the rule to apply is that the underlying writings be voluminous, and that in-court examination not be convenient. *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979) (admitting charts summarizing charges in indictment and overt acts evidencing conspiracy charge). Although the materials underlying the summary must be "admissible," they need not themselves be "admitted" into evidence. *Meyers*, 847 F.2d at 1412.

In addition, the summary chart must be accurate, authentic, and properly introduced. *Scales*, 594 F.2d at 563. Where a chart does not contain complicated calculations that would require an expert for accuracy, authentication of the chart requires only that the witness (1) have properly catalogued the exhibits and records on which the chart is based and (2) have knowledge of the analysis of the records referred to in the chart. *Id.* Neither of these requirements necessitates any special expertise. *Id.* The person who supervises the compilation of the summary chart is the proper person to attest to its authenticity and accuracy. *Id.*

**D. Business Records**

The United States intends to admit business records that were produced in discovery, including from the records of brokers, shippers, trailer rental companies, and carriers, as well as from companies such as Google, Verizon, T-Mobile, AT&T, and BMO Bank.

Federal Rule of Evidence 803(6) carves out an exception to the hearsay rule for business records. A document is admissible under this rule if two foundational facts are established: (1) the document was made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the document was kept in the course of a regularly conducted business activity. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990); *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 717 (9th Cir. 1990), *overruled on other grounds by Hunter v. Bryant*, 502 U.S. 224 (1991). In determining if these foundational facts have been established, the Court may consider hearsay and other

evidence not admissible at trial. *See* Fed. R. Evid. 104(a), 1101(d)(1); *Bourjaily v. United States*, 483 U.S. 171, 178-79 (1987).

The foundation may be established either through a custodian of records or "another qualified witness." Fed. R. Evid. 803(6). "The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record keeping system." *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993); *Ray*, 930 F.2d at 1370. The government does not need to establish when and by whom the document was prepared. *Ray*, 930 F.2d at 1370.

Challenges to the accuracy or completeness of the business records ordinarily goes to the weight of the evidence and not its admissibility. *See, e.g., La Porte v. United States*, 300 F.2d 878, 880 (9th Cir. 1962). Because Rule 803(6) represents a firmly rooted hearsay exception, if non-testimonial evidence meets the requirements for admission under the Rule, no further showing of reliability is necessary for admission under the Confrontation Clause. *See Ohio v. Roberts*, 448 U.S. 56, 66 n.8 (1980), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004); *Ray*, 930 F.2d at 1371; *United States v. Norton*, 867 F.2d 1354, 1363 (11th Cir. 1989); *United States v. Baker*, 855 F.2d 1353, 1360 (8th Cir. 1988).

Moreover, computer printouts that are compilations of data regularly maintained by a business are admissible as records of regularly conducted activity under Rule 803(6). *See United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988) ("Any question as to the accuracy of the printouts, whether resulting from incorrect data entry or the operation of the computer program, as with inaccuracies in any other type of business records, would have affected only the weight of the printouts, not their admissibility."); *United States v. Bonallo*, 858 F.2d 1427, 1436 (9th Cir. 1988) ("The fact that it is possible to alter data contained in a computer is plainly insufficient to establish untrustworthiness. The mere possibility that the logs may have been altered goes only to the weight of the evidence not its admissibility."); *U-Haul Int'l v. Lumbermans Mutual Casualty Co.*, 576 F.3d 1040, 1043-44 (9th Cir. 2009) (computer

records kept in the regular course of business activity properly admitted under Rule 803(6)).

For other business records, the United States produced custodian of records certifications and provided notice to defendant of its intent to introduce those business records under Rule 803(6) and 902(11). Specifically, these records are business records from Google, Verizon, T-Mobile, AT&T, and BMO Bank Certified records of regularly conducted activity are self-authenticating when accompanied by a written declaration establishing that (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made or kept in the course of a regularly conducted business activity. *See* Fed. R. Evid. 902(11). These records are self-authenticating. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990). Defendants have not challenged any such records to date.[4]

**E. Conditionally Admitting Evidence**

The United States may seek to show certain exhibits with early witnesses before seeking to admit the exhibits to present a streamlined case and to accommodate schedules of various witnesses. Federal Rule of Evidence 104(b) gives the trial court the discretion to conditionally admit evidence dependent on proof of later facts by the moving party. Fed. R. Evid. 104(b); *see also United States v. Gere*, 662 F.2d 1291, 1294 (9th Cir. 1981) ("The trial judge may make a preliminary determination of admissibility or may admit the testimony conditionally, subject to 'connecting up' with the foundation to be eventually laid by the prosecution."). If the United States ultimately fails to establish the required foundation for the conditionally admitted evidence, that evidence would be subject to a later motion to strike. *See, e.g.*, *United States v. Watkins*, 600 F.2d 201, 204 (9th Cir. 1979). However, to the extent the United States seeks to conditionally admit certain evidence, the United States will do so only with evidence where it will be able to lay the necessary foundation.

---

[4] The government intends to further meet and confer with defendants to streamline admission of such documents.

**F. Cross-Examination of Defendant**

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during direct examination, such as his intent and knowledge. "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence." *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1353-54 (9th Cir. 1981). *See, e.g.*, *United States v. Black*, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or of his waiver. Rather, the inquiry is whether the government's questions are reasonably related to the subjects covered by the defendant's testimony.") (citation modified). The scope of cross-examination is within the discretion of the Court. Fed. R. Evid. 611(b).

**G. Impeaching Witnesses**

Federal Rule of Evidence 608(a) permits attacks on a witness's credibility through testimony about the witness's general character or reputation for truthfulness or untruthfulness. Fed. R. Evid. 608(a). However, extrinsic evidence (including testimony from third-party witnesses) about the witness's specific instances of conduct for the purpose of attacking the witness's character for truthfulness or untruthfulness is prohibited, except in the case of prior convictions. Fed. R. Evid. 608(b). Counsel may only probe specific instances of conduct probative of a witness's character for truthfulness or untruthfulness during cross-examination (without proffering extrinsic evidence) with respect to (1) the testifying witness or (2) other witnesses about whose character the witness has testified about. *Id.* Thus, counsel may not offer testimony or any other extrinsic evidence about specific instances of conduct for the purpose of attacking a testifying witness's credibility.

**H. Affirmative Defenses, Reciprocal Discovery, and Scope of Expert Testimony**

The United States requested notice of affirmative defenses (including any entrapment, mental condition or duress, and/or alibi defense) and reciprocal discovery in

its discovery letters. The United States has not received any indication from defendant that they intend to call an alibi witness during their case-in-chief.

To the extent defendant may attempt to introduce or use any evidence at trial that he has not produced to the United States, such documents should be excluded. *See Taylor v. Illinois*, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence). To the extent that defendant attempts to introduce any documents or affirmative defense at trial that he has not produced, and to which the United States is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b) or 26.2, the United States reserves the right to object and request that the Court exclude the documents or the affirmative defense. *See also United States v. Young*, 248 F.3d 260, 269-270 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

## V. CONCLUSION

The United States may seek to supplement the information contained in this Trial Memorandum if the need arises.